UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                          :
T&O Shipping, Ltd.,                       :
                                          :
                     Plaintiff,           :
                                          :    05 Civ. 7106 (SAS)
     - against -                          :
                                          :
Lydia Mar Shipping Co. S.A.,              :
                                          :
                     Defendant.           :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/20/06

OPINION AND ORDER

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.  INTRODUCTION

This is a motion to vacate an order of maritime attachment and garnishment. This dispute arises out of an incident on June 7, 2005, when the vessel chartered to T&O Shipping, Ltd. ("T&O") by Lydia Mar Shipping Company ("Lydia Mar") under a time charter (the "Charter Party") ran aground off the coast of South Africa.

T&O is seeking (1) indemnity for potential future third party cargo claims resulting from the incident and based on bills of lading on which T&O is a party[1] and (2) damages for direct losses suffered as a result of Lydia Mar's alleged

---

[1] See Verified Complaint ¶ 6.

1

breach of contract for failure to provide a seaworthy vessel.[2] The Charter Party provides for arbitration of disputes in London, England and T&O has submitted its claim to a binding arbitration proceeding in England.[3] Both parties agree that English law governs the substantive claims in their dispute.[4]

On August 10, 2005, T&O requested the issuance of a writ of maritime attachment and garnishment against Lydia Mar pursuant to Rule B of the Supplementary Admiralty Rules of the Federal Rules of Civil Procedure. T&O

---

[2] *See* 12/2/05 Declaration of Patrick F. Lennon, counsel to T&O Shipping, Ltd., in Support of Plaintiff T&O Shipping, Ltd.'s Opposition to Motion to Vacate Order of Maritime Attachment and Garnishment ("Lennon Decl") ¶¶ 9-10 (calculating damages against Lydia Mar to include direct claims for damages for lost and damaged fuel and sub-freight T&O was unable to collect since the vessel did not complete the voyage as well as interest on the direct damages); 12/30/05 Sur-Reply Declaration of Patrick F. Lennon in Support of Plaintiff T&O Shipping, Ltd's Opposition to Motion to Vacate Order of Maritime Attachment and Garnishment ("Sur-Reply Decl.") ¶ 3 ("In its opposition papers dated December 2, 2005, T&O submitted evidence and facts proving that its claims against Lydia Mar in the London arbitration include direct damages . . .").

[3] T&O appointed an arbitrator on September 5, 2005 and Lydia Mar appointed an arbitrator on September 17, 2005. *See* 11/10/05 Declaration of Jens Gehrckens, Director of Lydia Mar, in support of Lydia Mar's Motion to Vacate the Ex Parte Order for Process of Maritime Attachment ("Gehrckens Decl.") ¶ 10.

[4] *See* Lydia Mar Shipping Co. S.A.'s Memorandum of Law in Support of its Motion to Vacate the Ex Parte Order for Process of Maritime Attachment ("Def. Mem.") at 4 (citing clause 93 of the Charter Party which states that the "contract is governed by English law"); T&O Shipping Ltd.'s Memorandum of Law in Opposition to Defendant's Motion to Vacate Order of Maritime Attachment and Garnishment ("Pl. Mem.") at 5.

stated by Verified Complaint and affidavit that Lydia Mar could not be located within this district. T&O further alleged that Lydia Mar has or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, and requested an order attaching the assets in order to obtain personal jurisdiction over Lydia Mar and secure T&O's claim. T&O claimed that it expected to recover the following amounts in the arbitration:

| | |
|---|---|
| On the principal claim: | $7,618,087.00 |
| 2 years interest at 6% per annum: | $914,170.38 |
| Costs (arbitrators, fees, etc.): | $100,000.00 |
| Attorney's fees: | $100,000.00 |
| Total: | $8,732,257.30[5] |

On August 11, 2005, this Court granted an ex parte order of maritime attachment ("Attachment Order") in the amount of $8,732,257.30. In August 2005, T&O attached $617,561.49 of Lydia Mar's funds.[6]

Lydia Mar now moves to vacate the Attachment Order arguing: (1) to the extent T&O's attachment is based on its need for security on claims of indemnity for potential third party cargo claims, the indemnity claims are not ripe[7]

---

[5] Verified Complaint ¶ 10.

[6] *See* Gehrckens Decl. ¶ 9.

[7] *See* Def. Mem. at 6-9.

3

and (2) to the extent T&O is arguing the attachment secures T&O's claims for direct losses, this Court should not consider those direct losses as the Verified Complaint did not allege them.[8]

## II. LEGAL STANDARD

### A. Supplemental Rules B & E

Supplemental Rule B states in relevant part:

> If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property . . . in the hands of garnishees named in the process.

Under Rule B "an order of maritime attachment must issue upon a minimal prima facie showing."[9] Once an attachment has been issued pursuant to Rule B, Supplemental Rule E(4)(f), allows "any person claiming an interest" in the attached property to request "a prompt hearing at which the plaintiff shall be required to show why the . . . attachment should not be vacated."[10]

---

[8] *See* Lydia Mar Shipping Co. S.A.'s Reply Memorandum of Law ("Reply Mem.") at 2.

[9] *Seaplus Line Co. v. Bulkhandling Handymax*, No. 05 Civ. 4813 (JGK), 2005 WL 3455816, at *2-3 (S.D.N.Y. Dec. 13, 2005) (citations omitted).

[10] Fed. R. Civ. P. Supp. R. E(4)(f). *See also Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263, 272 (2d Cir. 2002) ("Rule E(4)(f) is designed to satisfy

4

"[T]he party having obtained the maritime attachment bears the burden of showing that the attachment should not be vacated."[11] In order to satisfy this burden, this Court has previously held that "some showing beyond a prima facie case is required."[12] The purposes of Rule B are to enable the plaintiff to acquire jurisdiction over the defendant and/or obtain security for any resulting judgment.[13] Thus, to withstand a motion to vacate under Rule E(4)(f), the plaintiff must demonstrate "either that the attachment is necessary for the plaintiff to obtain jurisdiction in a convenient district, or that the plaintiff needs the security of the attachment to satisfy any judgment it may win in the underlying suit."[14] "The [Rule E(4)(f)] hearing is not intended to resolve definitively the dispute between

---

the constitutional requirement of due process by guaranteeing to the shipowner a prompt post-seizure hearing at which he can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings.") (quotation omitted).

[11] *Seaplus Line Co.*, 2005 WL 3455816, at *2.

[12] *Allied Maritime, Inc. v. The Rice Corp.*, No. 04 Civ. 7029, 2004 WL 2284389, at *2 (S.D.N.Y. Oct. 12, 2004), *reconsideration denied*, 361 F. Supp. 2d 148 (S.D.N.Y. 2004).

[13] *See id.* at *3; *Aurora Maritime Co., Ltd. v. Abdullah Mohamed Fahem & Co.*, 890 F. Supp. 322, 326 (S.D.N.Y. 1995), *aff'd*, 85 F.3d 44 (2d Cir. 1996).

[14] *Allied Maritime, Inc.*, 2004 WL 2284389, at *3. *Accord Seaplus Line Co.*, 2005 WL 3455816, at *3 ("*Allied Maritime* is consistent with longstanding practice"); *Aqua Stoli v. Gardner Smith Pty*, 384 F. Supp. 2d 726 (S.D.N.Y. 2005).

the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant."[15]

## B. Choice of Law

It is well settled that a forum selection clause should govern substantive questions, unless a strong showing is made to set it aside.[16] However, Rule B is procedural in nature and when a party brings a Rule B attachment in this district, questions about its validity are governed by federal law.[17] For example, in a recent case in this district, where English law was to be applied to the substantive questions in arbitration, the court applied federal law to the motion to vacate.[18] In that case, the court exercised its discretion and found that it would be "premature to attach funds in security of arbitration in London when that

---

[15] *Salazar v. Atlantic Sun*, 881 F.2d 73, 79-80 (3rd Cir. 1989). *Accord Thypin Steel Co. v. Certain Bills of Lading*, No. 96 Civ. 2166, 1996 WL 223896 (S.D.N.Y. May 2, 1996) (noting that plaintiff's burden under Rule E(4)(f) is to "produce evidence sufficient to show that the arrest was supported by reasonable grounds" and finding that plaintiff does not at this point "bear the burden of proving the merits of its claim").

[16] *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).

[17] *See Winter Storm*, 310 F.3d at 275.

[18] *See Eitzen Sealift A/S v. Cementos Andinos Dominicanos, SA*, No. 05 Civ. 4550, 2005 WL 2218025 at*2 (S.D.N.Y. Sep. 9, 2005) (Chin, J.).

6

arbitration has not been initiated."[19] Thus, the law of the contract applies to the question of whether a claim has accrued, but federal law governs the determination of whether an attachment is reasonable.

## C. Discretion of the District Court

The Second Circuit has held that "[t]he inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge."[20] A court has discretion to allow or disallow a Rule B attachment to secure contingent liabilities.[21] For example, in *Greenwich Marine*, the Second Circuit cancelled security obtained as a substitute for a marine attachment based on an unaccrued indemnity claim where it found that it was "exceedingly probable" that the claimant would never need to sue for indemnification, and other factors supported the determination that the indemnity

---

[19] *Id.*

[20] *Greenwich Marine, Inc. v. S.S. Alexandra*, 339 F.2d 901, 905 (2d Cir. 1965) (vacating security due to the prematurity of the underlying claim).

[21] *See Staronset Shipping Ltd. v. North Star Navigation Inc.*, 659 F. Supp. 189, 191 (S.D.N.Y. 1987) (finding that the district court has discretion to determine whether attachment should be vacated where indemnity action was premature and declining to vacate the attachment). *See also Seatrans Shipping Corp. v. Interamericas Marine Transport, Ltd.*, No. 97 Civ. 2329, 1997 WL 214939, at *1 (S.D.N.Y. Apr. 29, 1997) (exercising discretion to limit an attachment to "plaintiff's claim for past due hire plus its actual expenditures" but to exclude security for contingent liabilities).

claim was premature.²² Thus, the progress of the proceedings surrounding the underlying claim is a relevant consideration.

## III. DISCUSSION

### A. T&O's Claims for Indemnity

Lydia Mar argues that T&O failed to make a prima facie showing that it has a maritime claim against the defendant because T&O's claims against Lydia Mar have not accrued under the Charter Party.²³ The parties have agreed that Clause 63 of the Charter Party incorporates by reference at least the apportionment scheme of the Inter-Club New York Produce Exchange Agreement.²⁴ Clause 63 states in relevant part:

> Notwithstanding anything contained herein to the contrary Owners and Charterers expressly agree that they will apportion liability for cargo claims on the basis of the Interclub New York Produce Exchange Agreement Dated 1st September 1996 and either contribute settlement funds of [sic] indemnify each other

---

²² *Greenwich Marine, Inc.*, 339 F.2d at 905 (noting that relevant questions included whether there was an existing judgment and whether suit had been instituted).

²³ *See* Def. Mem. at 5.

²⁴ 11/30/05 Declaration of Dominic Peter Alexander Happé, barrister acting for T&O ("Happé Decl") ¶ 12; 12/15/05 Second Declaration of Charles Nicholas Bruton Priday, barrister acting for Lydia Mar Shipping Co. SA. ¶¶ 10-11.

8

accordingly.[25]

Two clauses in the Inter-Club Agreement require a claim to be resolved and paid prior to the determination of apportionment:

> Clause 4(c). Apportionment under this Agreement shall only be applied to cargo claims where the claim has been properly settled or compromised and paid.
>
> Clause 7. The amount of any cargo claim to be apportioned under this Agreement shall be the amount in fact borne by the party to the charterparty seeking apportionment.[26]

Lydia Mar argues that T&O's claims are not ripe, as none of the claims against T&O "have been concluded by a court order, arbitral proceeding, settlement or otherwise."[27] In addition, Lydia Mar argues that under the law of this circuit, this Court has discretion to vacate the attachment as premature.[28]

---

[25] 4/15/05 Rider Clauses to the Charter Party of M/V Kiperousa / T&O Shipping, Time Charter ¶ 63, Ex. A to Gehrekens Decl.

[26] Inter-Club New York Produce Exchange Agreement (1996), Ex. A to 11/31/05 Affidavit of James H. Hohenstein, Attorney for Lydia Mar.

[27] Def. Mem. at 8. *See also* 11/7/05 Declaration of Charles Nicholas Bruton Priday on certain matters of English Law, for Lydia Mar ("11/7/05 Priday Decl.") ¶ 5. Lydia Mar also argues that if T&O was right in its assertion that clause 63 adopts only the apportionment scheme of the Inter-Club Agreement, the apportionment scheme of clause 4(c) would nonetheless require the accrual of the cargo claims before attachment. *See* Reply Mem. at 6.

[28] *See* Def. Mem. at 10-12 (citing *Greenwich Marine Inc.*, 339 F.2d at 905).

9

T&O responds that the obligation to indemnify under the Charter Party accrues when the liability is incurred, not when it is discharged.[29] T&O argues that the incorporated apportionment scheme does not require that the claims be properly settled, compromised, or paid and that this substantive legal dispute should be resolved in the arbitration proceeding in England.[30]

There are no English cases which deal precisely with the question of whether a cause of action based on the Inter-Club Agreement accrues before or after the cargo claims have been resolved.[31] Not surprisingly, the English barristers retained by the parties, reach opposite conclusions on this question.[32]

T&O has not made a prima facie showing that it has a maritime claim against Lydia Mar for indemnity. Cargo claims have been filed against T&O by third parties, but they have yet to be resolved.[33] If T&O had paid claims and was

---

[29] *See* Pl. Mem. at 8-9 (citing Happé Decl ¶¶ 9-11).

[30] *See* Happé Decl. ¶¶ 12-13.

[31] *See* Def. Mem. at 8 (noting that while no English cases have directly addressed the issue of when a cause of action under the Inter-Club Agreement accrues, two decisions of the South African courts, which have persuasive authority in the English courts, have found that the obligation to indemnify arises only after the underlying claims have been resolved and paid).

[32] *See* Pl. Mem. at 9; Happé Decl. ¶ 16; 11/7/05 Priday Decl. ¶ 11.

[33] *See* Lennon Decl. ¶ 7.

10

in the process of actually seeking indemnity from Lydia Mar, the need for security would be clear. While it seems likely that an indemnity claim cannot be brought before the underlying claim is "properly settled or compromised and paid," the issue of whether the Charter Party *requires* an accrued cause of action before T&O may bring an indemnity claim remains in dispute. This is a substantive legal question which will be decided under English law in the arbitration and is not a question that this Court should or will resolve. Accordingly, the attachment should be vacated until that question is decided and/or the claims have clearly accrued.

### B. T&O's Claims for Direct Losses

T&O argues that even if this Court finds that the indemnity claims are not ripe, the motion to vacate must be denied, "at least to the extent that [Lydia Mar] seeks to vacate the security in respect of T&O's direct non-indemnity based claims."[34] Lydia Mar argues that T&O did not claim direct losses in the Verified Complaint and that, in the interests of fairness, this Court should refuse to

---

[34] Pl. Mem. at 8 (noting that T&O's non-indemnity claims amount to $503,942.27). To the extent T&O is claiming security for direct losses, Lydia Mar apparently concedes that these have accrued. *See* 1/4/06 Letter from James H. Hohenstein, Counsel for Lydia Mar, to the Court ("Reply Ltr.").

11

consider those allegations.[35]

T&O claims that paragraph 6 of the Verified Complaint sufficiently alleges that T&O suffered general damages, including direct damages and damages arising from third party claims.[36] Paragraph 6 states in relevant part:

> As a result of Defendant's grounding and stranding of the Vessel, which upon information and belief remains aground by her stern, and as a result of Defendant's failure to perform the charter, Plaintiff has been forced to defend, and has sustained damages, as a consequence of claims and demands presented by third-party cargo interests, i.e., the owners of cargo carried aboard the Vessel, for cargo loss, cargo damages, and cargo non-delivery.[37]

T&O also argues that Lydia Mar "knew full well" that T&O was asserting direct damages and claims for indemnity against it in the London arbitration when Lydia Mar filed its motion to vacate the attachment on November 10, 2005.[38] For example, T&O made a claim submission to the London arbitrators

---

[35] *See Cantor Fitzgerald v. Lutnick*, 313 F.3d 704, 711 n.3 (2d Cir. 2002) (finding that where a claim is first raised in a reply brief the court need not consider it); *Beckman v. United States Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) (finding that it is inappropriate for a plaintiff to raise new claims for the first time in submissions in opposition to a summary judgment motion because it does not give the defendant fair notice of the plaintiff's claims).

[36] *See* Sur-Reply Decl. ¶ 4.

[37] Verified Complaint ¶ 6. Paragraph 7 also states that "[a]s a result of Defendant's breach of the aforesaid charter, Plaintiff has and will continue to suffer damages in the total principal sum of $7,618,087.00."

[38] *Id.* ¶ 8.

12

on October 14, 2005 claiming "damages for breach of charter as to provision of an unseaworthy vessel and as to failure to take reasonable care of the cargo and as to failure to perform the instructions of Charterers to bring the cargo on board the vessel" to its destination.[39] Finally, T&O points to its opposition papers from December 2, 2005 to argue that it submitted evidence and facts to prove its direct damages claim.[40]

The relevant consideration here is the Verified Complaint. Paragraphs 6 and 7 do not mention direct damages. Paragraph 6 states that T&O "sustained damages, *as a consequence of* claims and demands presented by third-party cargo interests."[41] Though Lydia Mar may have eventually learned that T&O asserted direct damages in the London arbitration, the Verified Complaint, accompanying T&O's ex parte request for an order of attachment, did not include those damages.

Because T&O's Complaint made no claim for direct damages this is not a sufficient basis upon which to maintain the attachment. Thus, as noted earlier, the attachment must be vacated.

---

[39] 10/14/05 Claim Submission, Ex. 1 to Lennon Decl.

[40] *See* Sur-Reply Decl. ¶ 3.

[41] Verified Complaint ¶ 6 (emphasis added).

13

## C. Lydia Mar's Motion for Attorney's Fees

Lydia Mar asks that if this Court allows T&O to "amend its Complaint to include direct damages by way of its opposition papers," Lydia Mar should be awarded the attorneys' fees and disbursements incurred while preparing papers for this motion.[42] Because I am declining to consider direct damages, the motion for fees and disbursements is denied as moot.

## IV. CONCLUSION

For the foregoing reasons, the motion to vacate the Attachment Order is granted. If T&O intends to submit an amended complaint, it must do so within twenty days of this opinion. The Clerk of the Court is directed to close this motion (Docket #10).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
January 20, 2006

---

[42] See Reply Ltr. at 3.

14

## - Appearances -

**For plaintiff:**

Patrick F. Lennon, Esq.
TISDALE & LENNON, LLC
11 West 42nd St., Suite 900
New York, NY 10036
Tel: (212) 354-0025
Fax: (212) 869-0067

**For defendant:**

James H. Hohenstein, Esq.
Jean M. Del Colliano, Esq.
HOLLAND & KNIGHT, LLP
195 Broadway
New York, NY 10007
Tel: (212) 513-3200
Fax: (212) 385-9010